U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed June 11, 2008

United States Bankruptcy Judge

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re | § | Case No. 06-40127-DML-13 |
| | § | |
| HOWARD L. MCCARTHY, JR., | § | Chapter 13 Case |
| | § | |
| Debtor. | § | (en banc) |

### MEMORANDUM OPINION

Before: Houser, Chief Judge, and Jones, Lynn, Hale, Nelms and Jernigan, Bankruptcy Judges

Opinion by: Lynn, Bankruptcy Judge

Before the court is Debtor(s) [sic] Certification and Motion for Entry of Chapter 13 Discharge Pursuant to 11 U.S.C. § 1328(a) (the "Motion") filed by Howard L. McCarthy, Jr. ("Debtor") in the above-styled case. By the Motion, Debtor asserts, *inter alia*, that he has completed all payments required under his confirmed chapter 13 plan (the "Plan") and requests that the court enter an order discharging him from his debts provided for by the Plan. Tim Truman, the standing chapter 13 Trustee (the "Trustee" and, together with Debtor, the "Parties") filed his Response by Trustee to Debtor's [sic] Certification and Motion for Chapter 13

Discharge (the "Response") in which he asserts that Debtor should not be granted a discharge because he has not completed the 60-month term of the Plan.

In accordance with the procedures established by General Order 2006-03 (the "General Order") this matter was accepted by the court for en banc consideration. On February 19, 2008, in accordance with the General Order, the Chief Judge entered an En Banc Scheduling Order (the "Scheduling Order") establishing a briefing schedule and a deadline for any motion seeking leave to act as amicus curiae and setting a time for oral argument.

As provided by the Scheduling Order, the court conducted an en banc hearing addressing the Motion on April 18, 2008. During the hearing, the court heard oral argument from the Parties, as well as amici curiae ("Amici").[1]

This matter is subject to the court's core jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2). This memorandum opinion embodies the court's findings of fact and conclusions of law. FED. R. BANKR. P. 9014 and 7052.

## I. Background

The Parties have submitted a stipulation of facts (the "Stipulation"). In addition, as permitted by the General Order, the court takes judicial notice of portions of the record of Debtor's chapter 13 case.

On January 12, 2006, Debtor filed a voluntary petition for relief pursuant to chapter 13 of the Bankruptcy Code (the "Code").[2] At the time, Debtor's annualized current monthly income was $86,470.20, and his household included one other individual.[3] Because the median income

---

[1] Amici curiae briefs were filed by: (1) National Association of Consumer Bankruptcy Attorneys ("NACBA") and (2) White & Case LLP and Forshey & Prostok, L.L.P. Counsel for both Amici argued to the court.

[2] 11 U.S.C. §§ 101 et seq.

[3] The second household member, Debtor's wife, did not file for chapter 13 relief.

for a Texas household of two was $46,454 on the petition date, Debtor was classified as an above-median-income Debtor for purposes of Code § 1325(b), and Debtor's "applicable commitment period" under that section would be 60 months.

Debtor's Schedule A listed rental property owned by him and his wife at 2411 Palo Alto, Arlington, Texas (the "Property"). Debtor's one-half undivided interest in the Property was valued on his Schedule A at $41,700. In his Schedule C, Debtor did not claim his interest in the Property as exempt. Altogether, Debtor estimated he owed unsecured creditors $69,798, of which non-priority unsecured claims totaled $58,435.19.

On January 13, 2006, Debtor filed the Plan. To comply with section 1325(a)(4), the Plan was required to provide to unsecured creditors at least as much as they would receive in a hypothetical chapter 7 case. Based on the value of the Property, the Plan therefore provided a pool to unsecured creditors of $41,857—approximately a 60% dividend.[4] Neither the Trustee nor any creditor filed an objection to confirmation of the Plan, and on April 13, 2006, the court entered an order (the "Confirmation Order") confirming the Plan. By the terms of the Plan and Confirmation Order, Debtor was required to "pay [to the Trustee] a total of $49,260.00 in 60 months."

Pursuant to a July 2006 court order (the "Sale Order"), Debtor and his wife sold the Property, and his share of the proceeds were paid to the Trustee. As a result, following regular payments in the intervening months, on July 6, 2007, Debtor completed his total payments under the Plan of $49,260. On September 10, 2007, the Trustee filed a Notice of Chapter 13 Plan Completion.

---

[4] An unsecured creditors' pool calculated under Code § 1325(b) would have provided a smaller return.

On November 28, 2007, less than 21 months after filing his petition under chapter 13, Debtor filed the Motion. As of the filing of the Motion, unsecured creditors had not been paid in full, and the Plan had not been modified to change the Plan's 60-month term. On November 29, 2007, the Trustee filed the Response. In the Response, the Trustee asked that the court hold that Debtor may not receive his discharge because the 60-month term of the Plan has not run, the Plan has not been modified pursuant to Code § 1329 and unsecured claims have not been paid in full.

## II. Discussion

Much of the focus of the Parties and the Amici in their briefs and at oral argument was on the question of whether the "applicable commitment period" provided for in section 1325(b) of the Code, in Debtor's case 60 months, serves as a temporal requirement for the duration of a chapter 13 case or is simply a multiplier to be used to determine a minimum amount a debtor's plan must provide for unsecured creditors. A number of courts have struggled with this question, arriving at diverse conclusions. *Compare, e.g., In re Alexander*, 344 B.R. 742, 751 (Bankr. E.D.N.C. 2006), *and In re Dew*, 344 B.R. 655, 661 (Bankr. N.D. Ala. 2006), *and In re Nance*, 371 B.R. 358, 369 (Bankr. S.D. Ill. 2007), *and In re Slusher*, 359 B.R. 290, 305 (Bankr. D. Nev. 2007), *and In re Davis*, 348 B.R. 449 (Bankr. E.D. Mich. 2006) (all holding the "applicable commitment period" operates as a temporal requirement), *with In re Mathis*, 367 B.R. 629 (Bankr. N.D. Ill. 2007), *and In re Lawson*, 361 B.R. 215, 220 (Bankr. D. Utah 2007), *and In re Fuger*, 347 B.R. 94 (Bankr. D. Utah 2006) (all holding the "applicable commitment period" is a multiplier that is applied to disposable income to determine the amount to be paid to unsecured creditors). In the case at bar, however, we are not required to reach or decide that issue. Rather,

the Motion poses the easier question of whether Debtor is entitled to a discharge under section 1328(a) of the Code.

Section 1328(a) states, in pertinent part:

> [A]s soon as practicable after completion by the debtor of all payments under the plan . . . the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed . . . .

We must apply section 1328(a) in accordance with its plain meaning. *See Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004); *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989). If the meaning of the section is plain, we need inquire no further but need only test the facts before us against that plain meaning. *See Lamie*, 540 U.S. at 534 (citing *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)); *Ron Pair Enters., Inc.*, 489 U.S. at 241 (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)).

Section 1328(a)'s meaning is, in fact, plain and unambiguous. If the debtor has completed all payments under the plan,[5] "the court *shall* grant the debtor a discharge . . . ." 11 U.S.C. § 1328(a) (emphasis added). The use of the word "shall" in section 1328(a) means that granting the relief is mandatory if the preconditions specified in the section are met. *See Union City Barge Line, Inc. v. Union Carbide Corp.*, 823 F.2d 129, 135 (5th Cir. 1987); *Webber v. Crabtree*, 158 F.3d 460 (9th Cir. 1998). In the case at bar, there is no dispute–indeed, the Trustee is in agreement–that Debtor has completed all the payments called for by the Plan. Hence, in accordance with the unambiguous language of section 1328(a), the Motion must be granted.

The Trustee has expressed concern that, if sections 1328(a) and 1329(a) permit "completion of payments" under a plan by an early delivery of funds absent a modification approved by the court, the result could be that a future debtor would "slip the money" under the

---

[5] Section 1328(a) establishes other conditions, not relevant in the case at bar, to the grant of a discharge.

Memorandum Opinion – Page 5

Trustee's door, thus forcing a discharge under section 1328(a). The Trustee argues that a debtor might so act in anticipation of a windfall or other change of circumstances which, absent prepayment, would trigger proposal of a modification by the Trustee or a creditor under section 1329 to enhance the return to unsecured creditors.

Although the only provision that specifically requires notice and hearing respecting a motion for discharge under section 1328(a), section 1328(h), is of limited scope, whether payments have been completed as required by sections 1328(a) and 1329(a) is a question of fact. If a debtor's assertion of completion of payments is contested by the Trustee or a creditor, it will be the court that determines that factual issue. It follows that, if the Trustee determines payment by a debtor should be challenged, the Trustee would be entitled to raise and be heard on those issues he considers germain to whether the payment entitles the debtor to a discharge under section 1328(a).[6]

The surreptitious, unexplained and unexpected delivery to the Trustee by a debtor of sufficient funds to pay all remaining plan obligations, standing alone, might well be found by a court not to constitute completion of payments under a plan within the meaning of section 1328(a) (and section 1329(a)). Were such conduct motivated by such a debtor's desire to keep from the Trustee and the court an anticipated windfall or other change of circumstance, the occurrence of which could lead to the Trustee's or a creditor's proposal of a modification under section 1329, that debtor's conduct would, in fact, probably be fraudulent and his or her discharge would be subject to attack under section 1330. If one of the lessons of *Marrama v. Citizens Bank of Massachusetts (In re Marrama)*, 127 S. Ct. 1105 (2007), is that a debtor's

---

[6] As was done in the case at bar, a debtor seeking relief under section 1328 must do so by a motion. FED. R. BANKR. P. 9013. If an objection is filed to the debtor's motion, a contested matter is initiated. *See* 10 COLLIER ON BANKRUPTCY ¶ 9013.01 (15th ed., rev. 2007). Whether payments have not been completed – or there is another reason why a discharge should not be granted – will then be decided after a hearing.

fraudulent conduct may be addressed to prevent as well as undo a result achieved through the ordinary operation of the Code,[7] in such a case an objection to discharge might be appropriately entertained by the court before the grant of relief under section 1328(a) rather than, under section 1330, after entry of a discharge order.

But this case is not one where money was slipped under the Trustee's door in aid of a scheme to avoid a potential plan modification. In the case at bar, the Parties have stipulated that Debtor completed the payments called for in the Plan. Stipulation, ¶ 12. The Trustee not only accepted Debtor's payment of the total amount due under the Plan[8] but disbursed the money to creditor. Stipulation, ¶ 13. There is no practical way now to reverse the process and return Debtor to where he would have been had he not prepaid the payments provided for in the Plan. The Trustee even filed and transmitted to Debtor and Debtor's counsel his Notice of Completion of Plan (Stipulation, ¶ 14, Docket Item #27), the event which seems to have precipitated the filing of the Motion.

Nor in this case was the early completion of payments by Debtor unexpected. Debtor's Schedules I and J reflect a surplus of only $200 per month as compared to the monthly payment of $500 called for under the Plan. Docket Items #5 and #7. From these facts and Debtor's Form

---

[7] In *Marrama*, the issue was whether a debtor who acted in bad faith had an absolute right to convert his chapter 7 case to a chapter 13 case. The Court, distinguishing the case before it from those involving "honest but unfortunate debtors who do possess an absolute right to convert," responded to the dissenters' argument that the proper procedure was to allow conversion under Code § 706 and then reconvert under Code § 1307 by stating that "[n]othing in the text of either § 706 or § 1307(c) (or the legislative history of either provision) limits the authority of the court to take appropriate action in response to fraudulent conduct by the atypical litigant who has demonstrated he is not entitled to relief available to the typical debtor." *Marrama*, 127 S. Ct. at 1111. Thus, the Court held that facts which would have supported reconversion to chapter 7 would also warrant denial of the right to convert to chapter 13 initially.

[8] The Trustee noted during argument that payments under a plan are made by a debtor to a lockbox and so the Trustee cannot avoid accepting a payment by a debtor which might fully satisfy a plan. Whether the administrative convenience of the use of a lockbox serves to negate any legal consequences of acceptance of a payment is not at issue here. Suffice it to say that the simple receipt of a payment in a lockbox (versus payment slipped under the Trustee's door) will not be a significant factor affecting what ability the Trustee may have to block a discharge under section 1328(a).

B22C (Docket Item #8), we infer the likely correctness of the statement of counsel for NACBA during oral argument that the Plan was only feasible if the sale of the Property was assumed. The sale was necessary to provide the funds to complete the payments required by the Plan.

The sale of the Property occurred on Debtor's motion, of which the Trustee and unsecured creditors had notice.[9] Specifically, the motion to sell provided for transmittal to the Trustee of Debtor's half share of the net proceeds of sale. Docket Item #21. According to the motion to sell, the sales price was $87,500. As, according to Debtor's Schedules A and D (Docket Item #5), there were no liens against the Property, the Trustee could have predicted that the share of the proceeds which would be paid to him would exceed $40,000.

Given these facts, it is but a small logical step to the conclusion that the Trustee knew or should have known that granting of the motion to sell the Property would lead to early payment of the balance due under the Plan. Thus, the Trustee could easily have recognized well in advance of Debtor's "completion of payments" under the Plan that sections 1328(a) and 1329(a) would, in Debtor's view at least, be triggered long before the end of the Plan's 60-month term. On these facts, the Trustee's failure to raise the question of the propriety of prepayment without a modification prior to entry of the Sale Order and payment to the Trustee of Debtor's share of the proceeds[10] weights the equities in Debtor's favor.[11]

---

[9] The Trustee, according to the certificate of conference respecting the motion to sell, stated he had no objection to the motion, and the Trustee signed off on the Sale Order. Docket Items #21 and #24.

[10] We do not mean to suggest the Trustee acted improperly or waived any rights he had. Debtor did not give notice – by a modification or otherwise – that he intended to prepay all amounts due under the Plan. On the other hand, the foreseeable event of Debtor's early payment further distinguishes his case from those involving the sort of fraudulent conduct that concerns the Trustee.

The Trustee's conduct presumably was consistent with his regular operations. Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), full prepayment of plans (and resultant discharge of the debtor) was considered permissible in this Circuit. *See Bayshore Nat'l Bank of La Porte v. Smith (In re Smith)*, 252 F.3d 1357 (5th Cir. 2001); *Meza v. Truman (In re Meza)*, 467 F.3d 874 (5th Cir. 2006). The changes effected by BAPCPA that led to the instant dispute not only may require revision of debtors' expectations but also of some trustee procedures.

Memorandum Opinion – Page 8

The safe procedure for prepayment by a debtor under a plan is to seek approval of a plan modification under section 1329(a).[12] If that is done, the Trustee, creditors and the court will have confidence that the prepayment is undertaken in good faith and not in anticipation of a windfall or other change in the debtor's circumstances that might otherwise bring about proposal of a Trustee's or unsecured creditor's modification to the debtor's plan.[13] Further, by following the procedures required by section 1329 and Fed. R. Bankr. P. 3015, the debtor will protect against the contention that, in fact, payments have *not* been completed. Were a debtor to make a prepayment that did not result in a finding of completion of payments, that debtor would risk a determination that the prepayment resulted from a change in circumstance that allowed for a modification proposed by the Trustee or an unsecured creditor that would result not in the debtor's immediate discharge, but rather in continued commitment of disposable income for the plan's term and a concomitant improvement in the return to unsecured creditors.

In the case at bar, however, we are unable to see how on this record the Trustee could now argue that Debtor did not in fact complete the payments called for in the Plan. Further, the early completion of payments under the Plan was a clearly foreseeable event not only at the time of entry of the Sale Order and the resulting receipt by the Trustee of the proceeds from the sale of the Property but even as early as confirmation of the Plan. Nor is there a scintilla of evidence in the record suggesting bad faith on Debtor's part. Rather every indication is that Debtor acted

---

[11] The grant of a discharge is an exercise of the court's in rem, equitable jurisdiction. *See, e.g., Hood v. Tenn. Student Assistance Corp. (In re Hood),* 541 U.S. 440, 447 (2004).

[12] The plan or confirmation order might even appropriately specify that the term of the plan may be changed only by modification pursuant to section 1329.

[13] In most cases it is likely the Trustee and creditors would approve – even applaud – a modification resulting in early payment of claims.

in an above-board fashion and in anticipation that his actions would lead to his discharge in accordance with the language of section 1328(a).

### III. Conclusion

For the foregoing reasons, the Motion must be granted. The clerk of the court is directed to enter Debtor's discharge as prayed for in the Motion.

It is so ORDERED.

SO ORDERED the Chief Bankruptcy Judge for the Northern District of Texas has authorized Judge D. M. Lynn to enter this order on behalf of the Court.

# # # # END OF MEMORANDUM OPINION # # # #